Alex L. Fugazzi, Esq.
Nevada Bar No. 9022
Erin M. Gettel, Esq.
Nevada Bar No. 13877
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
Telephone: 702.784.5200
Email: afugazzi@swlaw.com
       egettel@swlaw.com

Steven Cooper, Esq. (*Pro Hac Vice Forthcoming*)
Samuel Kadosh, Esq. (*Pro Hac Vice Forthcoming*)
Jonathan Gordon, Esq. (*Pro Hac Vice Forthcoming*)
REED SMITH LLP
599 Lexington Avenue, Floor 22
New York, New York 10022
Telephone: 212.521.5400
Email: scooper@reedsmith.com
       skadosh@reedsmith.com
       jonathan.gordon@reedsmith.com

*Attorneys for Plaintiff Republic of Kazakhstan*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| REPUBLIC OF KAZAKHSTAN,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>BIG SKY ENERGY CORPORATION,<br><br>　　　　　Defendant. | Case No.<br><br>**COMPLAINT** |

The Republic of Kazakhstan ("Kazakhstan"), by and through its undersigned counsel, submits this complaint against Big Sky Energy Corporation ("Big Sky") and alleges as follows:

**SUMMARY OF THE ACTION**

1. Kazakhstan brings this action to recognize and enforce an arbitral award rendered in its favor against Big Sky in ICSID Case No. ARB/17/22 on November 24, 2021 (the "Award"), following an arbitration proceeding conducted in accordance with the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, March 18, 1965,

4864-7344-7191

1. 17 U.S.T. 1270 (the "ICSID Convention"). *See* Declaration of Steven Cooper, dated March 21, 2022 ("Cooper Decl.") Ex. A (Certified copy of the Award issued in ICSID Case No. ARB/17/22 on November 24, 2021); *see also id.* Ex. B (ICSID Convention).

2. Pursuant to the Treaty Between the United States of America and the Republic of Kazakhstan Concerning the Encouragement and Reciprocal Protection of Investment (the "U.S.-Kazakhstan BIT"), Kazakhstan agreed to binding arbitration in accordance with the ICSID Convention as a mechanism to resolve investment disputes with a company of the United States. *See id.* Ex. C (U.S.-Kazakhstan BIT) at Art. VI.

3. On September 22, 2016, Big Sky notified Kazakhstan of an investment dispute involving alleged violations of the U.S.-Kazakhstan BIT and, thereafter, on June 19, 2017, submitted a Request for Arbitration to ICSID in which it elected to submit its claims to binding arbitration in accordance with the ICSID Convention. *See id.* Ex. D (Notice of Dispute dated September 22, 2016); *see also id.* Ex. E (Request for Arbitration dated June 19, 2017).

4. On November 24, 2021, an arbitral tribunal duly convened and constituted under the ICSID Convention, issued the Award, which, *inter alia*, upheld the tribunal's jurisdiction over Big Sky's claims, denied all of Big Sky's claims, and ordered Big Sky to pay Kazakhstan "USD 575,821.71 for the expended portion of [Kazakhstan's] advances to ICSID plus interest at a rate of 12-month USD LIBOR + 2.0%, compounded annually, which shall accrue from 60 days after the date of the Award until the date upon which payment is made." *See id.* Ex. A (Certified copy of the Award issued in ICSID Case No. ARB/17/22 on November 24, 2021).

5. Pursuant to Article 53 of the ICSID Convention, awards rendered in arbitrations pursuant to the ICSID Convention are binding on the parties and not subject to collateral attack. *See id.* Ex. B (ICSID Convention) at Art. 53. Pursuant to Article 54 of the ICSID Convention and 22 U.S.C. § 1650a monetary awards rendered in arbitrations pursuant to the ICSID Convention must be enforced and given the same full faith and credit as if the award were a final judgment of a state court in the United States. *See id.* Art. 54; *see also* 22 U.S.C. § 1650a.

6. Accordingly, Kazakhstan requests that this Court recognize and enforce the pecuniary obligations imposed by the Award by entering an order and judgment requiring

Big Sky to pay Kazakhstan USD 575,821.71 plus interest at a rate of 12-month USD LIBOR + 2.0% compounded annually from January 24, 2022 until the date upon which payment is made.

## PARTIES

7. Plaintiff Kazakhstan is a foreign sovereign state located in central Asia.

8. Defendant Big Sky is a domestic corporation organized under the laws of the State of Nevada. *See* Cooper Decl. Ex. F (Nevada Secretary of State Business Entity Information for Big Sky Energy Corporation). It was originally incorporated with the name "Institute for Counseling INC" in February 1993 and, after several name changes, its name was ultimately registered as "Big Sky Energy Corporation" on December 9, 2004. *See id.* Ex. G (Articles of Incorporation and Certificates of Amendment for Big Sky Energy Corporation).

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this proceeding pursuant to 22 U.S.C. § 1650a because this is a proceeding to enforce a monetary award issued by an arbitral tribunal pursuant to chapter IV of the ICSID Convention. *See* 22 U.S.C. § 1650a(b) ("The district courts of the United States … shall have exclusive jurisdiction over actions and proceedings under subsection (a) of this section, regardless of the amount in controversy."); *see also* 22 U.S.C. § 1650a(a) ("An award of an arbitral tribunal rendered pursuant to chapter IV of the convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States….").

10. This Court may exercise personal jurisdiction over Big Sky pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Nev. Rev. Stat. § 14.065(1) because Big Sky is incorporated in the State of Nevada. *See* Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant … who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."); Nev. Rev. Stat. § 14.065(1) ("A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the constitution of this state or the Constitution of the United States."); *see also Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) ("The paradigm

all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business.")

11. This Court is the proper venue for this proceeding pursuant to 28 U.S.C. § 1391(b)(1) because the only defendant, Big Sky, resides in the District of Nevada. *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in … a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.")

<b><u>THE ICSID CONVENTION AND THE U.S.-KAZAKHSTAN BILATERAL INVESTMENT TREATY</u></b>

**A.     The ICSID Convention**

12. The ICSID Convention is a multilateral treaty among 164 Signatory and Contracting States, including both the United States and Kazakhstan. *See* Cooper Decl. Ex. H (Database of ICSID Member States, available at https://icsid.worldbank.org/about/member-states/database-of-member-states).

13. The United States signed the ICSID Convention on August 27, 1965, deposited its instrument of ratification on June 10, 1966, and the ICSID Convention entered into force for the United States on October 14, 1966. *See id.*

14. Kazakhstan signed the ICSID Convention on July 23, 1991, deposited its instrument of ratification on September 21, 2000, and the ICSID Convention entered into force for Kazakhstan on October 21, 2000. *See id.*

15. The ICSID Convention establishes the International Centre for Settlement of Investment Disputes ("<u>ICSID</u>") and provides a framework for resolution of investment disputes between "Contracting States" and "nationals of other Contracting States," such as the arbitration that resulted in the Award at issue here. *See id.* Ex. B (ICSID Convention) at Chapters I and IV.

16. Pursuant to Article 25(1) of the ICSID Convention, the jurisdiction of ICSID extends to "any legal dispute arising directly out of an investment, between a Contracting State … and a national of another Contracting State, which the parties to the dispute consent in writing to submit to [ICSID]." *See id.* at Art. 25(1). Article 25(1) further provides that "[w]hen the parties have given their consent, no party may withdraw its consent unilaterally." *Id.*

17. As a corporation formed under the laws of the State of Nevada, Big Sky

is a "National of another Contracting State" within the meaning of Article 25(2)(b) of the ICSID Convention. *See id.* at Art. 25(2)(b) ("National of another Contracting State" includes "any juridical person which had the nationality of a Contracting State other than the State party to the dispute on the date on which the parties consented to submit such dispute to conciliation or arbitration …").

18. Big Sky consented in writing to the arbitration of the dispute with Kazakhstan in paragraph 32 of its Request for Arbitration. *See id.* Ex. E (Request for Arbitration, dated June 19, 2017) at ¶ 32 ("The Claimant hereby consents to submit the dispute to the [ICSID] for arbitration in accordance with the [ICSID] Convention and the [US-Kazakhstan] BIT."). Big Sky also submitted a Resolution of its Sole Director, dated May 18, 2017 authorizing the initiation of arbitration proceedings under the ICSID Convention and the US-Kazakhstan BIT and a Power of Attorney in favor of Fietta LLP, dated May 18, 2017 authorizing the submission of a Request for Arbitration to ICSID. *See id.* Ex. I (Resolution of the Sole Director of Big Sky); *see also id.* Ex. J (Power of Attorney by Big Sky to Fietta LLP).

**B.**     **The U.S.-Kazakhstan Bilateral Investment Treaty**

19. The U.S.-Kazakhstan BIT is a bilateral treaty between the United States and Kazakhstan, which was signed on May 19, 1992 and entered into force on January 12, 1994. *See* Cooper Decl. Ex. K (Information from UNCTAD Investment Policy Hub).

20. The purpose of the U.S.-Kazakhstan BIT is to "promote greater economic cooperation between [the United States and Kazakhstan], with respect to investment by nationals and companies of one Party in the territory of the other Party" by establishing a framework for "fair and equitable treatment of investment." *See id.* Ex. C (U.S.-Kazakhstan BIT) at Recitals.

21. Pursuant to Article VI of the U.S.-Kazakhstan BIT, in the event that an investment dispute arises "between a Party and a national or company of the other Party," a number of mechanisms for resolution are available to the investor. *See id.* at Art. VI. Among other options, "the national or company concerned may choose to submit the dispute for resolution … in accordance with the terms of paragraph 3," which provides, *inter alia*, that "the national or company concerned may choose to consent in writing to the submission of the dispute for

settlement by binding arbitration … to [ICSID] established by the [ICSID Convention] …" *See id.* at Art. VI (2)(c) and Art. VI (3).

22. Indeed, paragraph 4 of Article VI makes clear that the United States and Kazakhstan consent "to the submission of any investment dispute for binding arbitration in accordance with the choice specified in the written consent of the national or company under paragraph 3." *See id.* at Art. VI (4). It also makes clear that "[s]uch consent[] together with the written consent of the national or company when given under paragraph 3 shall satisfy the requirement for … written consent of the parties to the dispute for purposes of Chapter II of the ICSID Convention (Jurisdiction of [ICSID]) …" *See id.*

23. As a corporation formed under the laws of the State of Nevada, Big Sky is a "company" of the United States within the meaning of Article I (1)(b) of the U.S.-Kazakhstan BIT. *See id.* at Art. I (1)(b) ("company" of a Party means, *inter alia*, "any kind of corporation …. legally constituted under the laws and regulations of a Party or a political subdivision thereof whether or not organized for pecuniary gain, or privately or governmentally owned or controlled").

24. Accordingly, pursuant to Article VI (4) of the US-ROK BIT and the choice specified by Big Sky in its Request for Arbitration, Kazakhstan consented to the arbitration of the dispute under the ICSID Convention.

## THE ARBITRATION AND THE AWARD

25. The underlying dispute that was arbitrated under the ICSID Convention arose out of Big Sky's efforts to explore, develop, and exploit oil resources in Kazakhstan, and, more specifically, judicial proceedings relating to certain corporate agreements that were entered into by Big Sky's subsidiaries and/or affiliates, Big Sky Energy Kazakhstan LLP ("Big Sky Canada") and KoZhaN LLP ("Kozhan"), for the use of the rights to exploit the oil resources. *See id.* Ex. A (Award) at ¶ 5; *see also id.* at ¶¶ 69, 89.

26. In April 2001, five Kazakh individuals (the "Original Owners") formed Kozhan. *See id.* at ¶¶ 80, 83-84. In early 2003, Kozhan obtained the right to explore and drill for oil in three oil fields located in Kazakhstan. (the "Oil Rights"). *See id.* at ¶¶ 81, 106. Exploring and drilling

for oil is extremely expensive, and Kozhan allegedly lacked the necessary funds to exploit the Oil Rights it had acquired. *See id.* at ¶ 107.

27. To obtain the funds necessary to exploit the Oil Rights, in 2003, the Original Owners sold a 90% stake in Kozhan to a special purpose vehicle registered in Alberta, Canada, Big Sky Canada, which was wholly-owned by Big Sky. *See id.* at ¶¶ 75-76, 107-109. In 2005, the Original Owners sold Big Sky Canada their remaining 10% stake in Kozhan. *See id.* at ¶ 76, 110. The end result of that transaction was that Big Sky indirectly owned 100% of Kozhan and its Oil Rights. *See id.* at ¶ 110.

28. In August 2006, the Original Owners' spouses sued Big Sky Canada in the courts of Kazakhstan to invalidate the initial transfer of the 90% interest in Kozkhan to Big Sky Canada. *See id.* at ¶¶ 85, 113. Big Sky Canada lost those court proceedings and, as a result, lost its 90% stake in Kozhan. *See id.* The outcome of those Kazakh court proceedings was ratified by the Kazakh Supreme Court. *See id.* Following further litigation in the courts of Kazakhstan, Big Sky Canada also lost its remaining 10% stake in Kozhan and, thus, lost all of its interest in the Oil Rights. *See id.* at ¶¶ 86, 112-120.

29. On June 19, 2017, Big Sky commenced the arbitration that led to the Award by submitting a Request for Arbitration to the Secretary-General of the ICSID in which it asserted several claims under the US-ROK BIT based on the conduct and outcome of the Kazakh court proceedings, including the denial of fair and equitable treatment to its investments in the ROK. *See id.* Ex. E (Request for Arbitration).

30. The arbitral tribunal was originally constituted on January 29, 2018, and was subsequently reconstituted on June 15, 2018. *See id.* Ex. A (Award) at ¶¶ 7-21. The arbitral tribunal was ultimately comprised of Professor Bernardo M. Cremades (appointed by the ICSID), Professor Stanimir A. Alexandrov (appointed by Big Sky), and Judge Peter Tomka (appointed by the ROK). *See id.*

31. Big Sky was represented in the arbitration by its attorneys from Fietta LLP. *See id.* at ¶ 61. Big Sky participated in all aspects of the arbitration and filed numerous submissions, including a Memorial on the Merits, dated September 21, 2018, a Counter-Memorial on

Preliminary Objections and Reply on the Merits, dated July 19, 2019, and a Rejoinder on Preliminary Objections dated February 7, 2020. *See id.* at ¶¶ 6, 24, 41, and 48. Big Sky also presented a witness and three experts, who gave testimony and submitted witness statements and/or expert reports. *See id.* at ¶¶ 24, 41, and 62.

32. In the arbitration, Big Sky alleged several claims under the U.S.-Kazakhstan BIT based on the conduct and outcome of the Kazakh court proceedings, including the denial of fair and equitable treatment to its investments in Kazakhstan. *See id.* at ¶¶ 121-161, 290-332. Kazakhstan objected to the jurisdiction of the tribunal, and opposed Big Sky's contentions that, among other things, the Kazakh courts failed to properly apply Kazakh procedural and substantive law. *See id.* at ¶¶ 162-186, 333-357; *see also id.* at ¶¶ 190-215.

33. The arbitral tribunal conducted the hearing on jurisdiction and liability from January 4 to 12, 2021, during which the arbitral tribunal heard testimony from witnesses and experts for both Big Sky and Kazakhstan. *See id.* at ¶ 62.

34. After consideration of the extensive submissions by Big Sky and Kazakhstan, the arbitral tribunal determined that: (i) it had jurisdiction over the claims, *see id.* at ¶¶ 246-289; and (ii) all of Big Sky's claims for violations of the U.S.-Kazakhstan BIT failed on the merits, *see id.* at ¶¶ 358-562.

35. In light of its rejection of Big Sky's claims, the arbitral tribunal considered whether an award of costs in favor of Kazakhstan would be appropriate. The arbitral tribunal ordered Big Sky to pay Kazakhstan the amount of "USD 575,821.71 for the expended portion of [Kazakhstan's] advances to ICSID plus interest at a rate of 12-month USD LIBOR + 2.0%, compounded annually, which shall accrue from 60 days after the date of the Award until the date upon which payment is made." *See id.* at ¶¶ 589-600.

36. The Award was authorized by Article 61(2) of the ICSID Convention, which provides that:
> In the case of arbitration proceedings the Tribunal shall, except as the parties otherwise agree, assess the expenses incurred by the parties in connection with the proceedings, and shall decide how and by whom those expenses, the fees and expenses of the members of the Tribunal and the charges for the use of the facilities of the Centre shall be paid. Such decision shall form part of the award.

*See id.* Ex. B (ICSID Convention) at Art. 61(2).

37. Article 53(1) of the ICSID Convention provides that "[t]he award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention." *See id.* at Art. 53(1). It further provides that "[e]ach party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention." *See id.*

38. On December 9, 2021, Kazakhstan's legal representatives sent a letter to Big Sky's legal representatives demanding payment of the amount set forth in the Award. *See id.* Ex. L (Letter dated December 9, 2021).

39. Despite the requirements of the ICSID Convention, and Kazakhstan's demand that Big Sky satisfy the Award, Big Sky has not made any payment to Kazakhstan.

**LEGAL BASIS FOR RELIEF**

40. The ICSID Convention obligates each of the Contracting States to recognize and enforce ICSID awards. Specifically, Article 54(1) of the ICSID Convention provides that:

> Each Contracting State shall recognize and enforce an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by the award within its territories as if it were a final judgment of a court in that State. A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state.

*See id.* at Art. 54(1).

41. In addition, Article 54(2) of the ICSID Convention provides that:
> A party seeking recognition or enforcement in the territories of a Contracting State shall furnish to a competent court or other authority which such State shall have designated for this purpose a copy of the award certified by the Secretary-General. Each Contracting State shall notify the Secretary-General of the designation of the competent court or other authority for this purpose and of any subsequent change in such designation.

*See id.* at Art. 54(2).

42. As a Contracting State to the ICSID Convention, the United States is obligated to recognize and enforce an award as if it were a final judgment of a court of the United States.

The United States' obligations under Article 54 of the ICSID Convention were implemented by Congress at 22 U.S.C. § 1650a, which provides, in relevant part, that:

> (a) … An award of an arbitral tribunal rendered pursuant to chapter IV of the convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States ….
>
> (b) … The district courts of the United States … shall have exclusive jurisdiction over actions and proceedings under subsection (a) of this section, regardless of the amount in controversy.

*See* 22 U.S.C. § 1650a.

43. Unlike other international arbitration awards, awards rendered under the ICSID Convention are not subject to review under the Federal Arbitration Act (the "FAA"), which provides a separate framework for judicial facilitation of dispute resolution through arbitration. As a result, this Court does not consider the FAA standards and defenses, and, under the ICSID Convention, may only examine the judgment's authenticity to enforce the obligations imposed by the award. *See* 22 U.S.C. § 1650a(a) ("The [FAA] (9 US.C. 1 *et seq.*) shall not apply to enforcement of awards rendered pursuant to the [ICSID] convention."); *see also Koch Minerals Sàrl v. Bolivarian Republic of Venez.*, Civil Action No. 17-cv-2559-ZMF, 2021 U.S. Dist. LEXIS 155363, at *7 (D.D.C. Aug. 18, 2021) ("[T]he [FAA]—which guides judicial review of certain kinds of arbitral awards—does not provide grounds for vacating an ICSID award."); *OI European Grp. B.V. v. Bolivarian Republic of Venez.*, Civil Action No. 16-1533 (ABJ), 2019 U.S. Dist. LEXIS 85128, at *11 (D.D.C. May 21, 2019) ("ICSID's enabling statute makes clear that the Court may not re-examine the propriety of the award."); *TECO Guat. Holdings, LLC v. Republic of Guat.*, Civil Action No. 17-102 (RDM), 2018 U.S. Dist. LEXIS 168518, at *4-5 (D.D.C. Sep. 30, 2018) ("A member state is 'not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award;' all it may do is 'examine the judgment's authenticity and enforce the obligations imposed by the award.'") (quoting *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*, 863 F.3d 96, 102 (2d Cir. 2017)).

44. District courts thus are compelled to enforce ICSID awards without allowing any

substantive challenges to the enforcement of the awards. *See, e.g., Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, 2018 WL 6605633, at *6 (D.D.C. Dec. 17, 2018); *Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru*, 904 F. Supp. 2d 131, 132-34 (D.D.C. 2012); *Republic of Panama v. Jurado*, No. 8:12- cv-1647, Doc. 18 (M.D. Fla. June 13, 2013).

## CLAIM FOR RECOGNITION AND ENFORCEMENT OF THE AWARD

45. Kazakhstan restates and incorporates all of the foregoing paragraphs of this Complaint as though fully set forth herein.

46. Big Sky and Kazakhstan consented to the jurisdiction of ICSID to resolve the dispute pursuant to the Request for Arbitration and the U.S.-Kazakhstan BIT.

47. The United States and Kazakhstan were Contracting States to the ICSID Convention when Big Sky and Kazakhstan consented to the jurisdiction of ICSID.

48. The Award was rendered by an arbitral tribunal pursuant to Chapter IV of the ICSID Convention.

49. Article 54(1) of the ICSID Convention requires Contracting States, including the United States, to "recognize an award rendered pursuant to [the ICSID] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State."

50. Article 54(1) is incorporated into U.S. law by 22 U.S.C. § 1650a, which requires that the pecuniary obligations imposed by the Award "shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several states." In turn, 28 U.S.C. § 1738 requires this Court to accord full faith and credit to the authenticated judgments of the several states.

51. On November 24, 2021, an arbitral tribunal duly convened and constituted under the ICSID Convention, issued the Award, which, *inter alia*, ordered Big Sky to pay Kazakhstan "USD 575,821.71 for the expended portion of [Kazakhstan's] advances to ICSID plus interest at a rate of 12-month USD LIBOR + 2.0%, compounded annually, which shall accrue from 60 days after the date of the Award until the date upon which payment is made."

52. For all these reasons, pursuant to 22 U.S.C. § 1650a, Article 54 of the ICSID Convention, and 28 U.S.C. § 1738, the Award must be recognized and the pecuniary obligations thereof enforced "as if the award were a final judgment of a court of general jurisdiction of one of the several states."

**PRAYER FOR RELIEF**

**WHEREFORE**, Kazakhstan respectfully requests that this Court enter an order:

(a) recognizing and enforcing the Award against Big Sky;

(b) entering judgment against Big Sky and in favor of Kazakhstan in the amount of USD 575,821.71, together with interest from January 24, 2022 to the date of payment in full at a rate of 12-month USD LIBOR + 2.0%, compounded annually; and

granting such other and further relief as may be just and proper.

Dated: March 22, 2022                    SNELL & WILMER L.L.P.

By: */s/ Alex L. Fugazzi*
Alex L. Fugazzi, Esq.
Erin M. Gettel, Esq.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada  89169

Steven Cooper, Esq. (*Pro Hac Vice Forthcoming*)
Samuel Kadosh, Esq. (*Pro Hac Vice Forthcoming*)
Jonathan Gordon, Esq. (*Pro Hac Vice Forthcoming*)
REED SMITH LLP
599 Lexington Avenue, Floor 22
New York, New York 10022

*Attorneys for Plaintiff Republic of Kazakhstan*